UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GERARDO ALONSO BANOS-JIRON (A-Number: 097-735-757),

Petitioner,

v.

TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; SERGIO ALBARRAN, Field Office Director, San Francisco Field Office Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States; MINGA WOFFORD, Warden of Mesa Verde ICE Processing Center,

Respondents.

No.  1:26-cv-00716-KES-CDB (HC)

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Doc. 1

Before the Court is petitioner Gerardo Alonso Banos-Jiron's motion for temporary restraining order.  Doc. 2.  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

## I.    Background

Petitioner is a citizen of El Salvador who was removed from the United States in 2009.  *See* Doc. 1 at ¶ 3.  He re-entered the United States without inspection on February 3, 2018, and

1

was encountered by immigration officials the next day. Doc. 9-1, Villagran Decl. at ¶ 9. After initially detaining him and providing him with a Notice of Intent/Decision to Reinstate Prior Order, *see id.* ¶ 10; Doc. 9-2, Ex. 4, immigration officials released petitioner pending an interview with an asylum officer as to whether he had a credible fear of persecution, *see* Doc. 9-2, Ex. 10 at 40. They provided petitioner with an Order of Supervision outlining the conditions of his release. Doc. 9-2, Ex. 6. Those conditions included that he report for routine check-ins with immigration officials and that he not commit any crimes. *See id.*

The regulations that authorize ICE to release a noncitizen who has previously been ordered removed provide:

> Before making any . . . decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> 1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> 2) The detainee is presently a non-violent person;
>
> 3) The detainee is likely to remain nonviolent if released;
>
> 4) The detainee is not likely to pose a threat to the community following release;
>
> 5) The detainee is not likely to violate the conditions of release; and
>
> 6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate Commissioner and district director "must [also] be able to reach the conclusions set forth in paragraph (e) of this section" "[b]efore making any decision to release a detainee").

For seven-and-a-half years after his release, petitioner reported for check-ins with ICE as required by his Order of Supervision. *See* Doc. 1 at ¶¶ 26–27. He appeared for his credible fear interview with an asylum officer on March 22, 2021, and the asylum officer found that petitioner had a credible fear of persecution. *Id.* ¶ 27. The asylum officer's finding was referred to an immigration judge, and petitioner was placed in proceedings before the immigration court. *See id.*; Doc. 9-2, Ex. 10 at 40. Petitioner appeared for a hearing before an immigration judge on

2

September 15, 2025, and his next hearing was scheduled for February 6, 2026.  Doc. 1 at ¶ 28.

On May 24, 2022, petitioner was convicted of a misdemeanor for driving on a suspended license.  Doc. 9-1, Villagran Decl. at ¶ 14.  On July 19, 2022, petitioner was convicted of a misdemeanor for driving under the influence.  *Id.* ¶ 13; Doc. 9-2, Ex. 7 at 29–30.  ICE did not seek to re-detain petitioner at that time.

Over three years later, on September 17, 2025, ICE agents arrested petitioner at his home.  Doc. 9-1, Villagran Decl. at ¶ 15.  They revoked his Order of Supervision and provided him with a document titled "Notice of Revocation of Release."  *Id.*; Doc. 9-2, Ex. 8.  That document stated that petitioner had "violated the conditions of [his] release" because he was convicted of driving under the influence on July 19, 2022.  *Id.*  Petitioner has now been detained at Mesa Verde ICE Processing Center for over six months.  *See* Doc. 1 at ¶ 1.  He asserts that he was not provided an informal interview to respond to the reasons for the revocation of his release, as required by ICE's regulations.  Doc. 2-1 at 26.  Respondents did not dispute this assertion.  *See* Doc. 9.

On January 27, 2026, petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order.  *See* Docs. 1, 2.  The Court set a briefing schedule on the petition.  Doc. 4.  Respondents filed an opposition, Doc. 9, and petitioner filed a reply, Doc. 10.  The parties subsequently filed supplemental briefing to address whether 8 C.F.R. § 241.13(i)(1) authorizes detention for a period of more than six months.  Docs. 11, 12, 13.

## II.    Conversion to a Motion for Preliminary Injunction

The standards for issuing a temporary restraining order and a preliminary injunction are substantially the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, *see* Doc. 9.  Petitioner's motion is therefore converted to a motion for preliminary injunction.

## III.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.    Discussion**

    **a.  Likelihood of Success on the Merits**

Petitioner argues that ICE violated its regulations and the Due Process Clause of the Fifth Amendment when it revoked his release. *See* Doc. 2 at 10–26. The Court addresses those arguments below.

    **i.  8 C.F.R. § 241.13**

The regulation at issue in this case, 8 C.F.R. § 241.13, was promulgated "in response to the Supreme Court's" decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Diouf v. Napolitano*, 634 F.3d 1081, 1089 n.10 (9th Cir. 2011); Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01 ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").

In *Zadvydas*, the Supreme Court read an implicit constitutional limitation into 8 U.S.C. § 1231, the statute that authorizes the detention of a noncitizen who has been ordered removed. *Zadvydas*, 533 U.S. at 692, 701. The Court held that detention after a removal order initially

becomes final is "presumptively reasonable" for a period of "six months." *Id.* at 701. The Court noted that "Congress previously doubted the constitutionality of detention for more than six months." *Id.* After this six month period, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen. *Id.*

Section 241.13(i) governs how and when ICE may detain a noncitizen who was previously ordered removed, was detained at that time, and was then released on an Order of Supervision because there was no significant likelihood of removal. The regulation authorizes detention on two grounds. First, it provides that "[a]ny alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody . . . . [and] [t]he alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1). Second, 8 C.F.R. § 241.13(i)(2) authorizes detention "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

ICE detained petitioner on September 17, 2025 under section 241.13(i)(1) on the ground that his conviction for driving under the influence violated the terms of his Order of Supervision. *See* Doc. 9-2, Ex. 8; Doc. 9-2, Ex. 6. But the plain text of that regulation limits detention to a period of six months. It states that, once returned to custody, "[t]he alien may be continued in detention *for an additional six months* in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1) (emphasis added).

Petitioner's detention surpassed six months on March 17, 2026, and 8 C.F.R. § 241.13(i)(1) no longer authorizes his detention. Respondents concede in their supplemental brief that they could "not locate[] authority to indicate that § 241.13(i) authorizes a period of

5

detention of more than six months[.]" Doc. 13 at 1 (emphasis omitted). They nevertheless argue that "it does not appear that § 241.13(i) *limits* the detention period to only six months."[1] *Id.* Citing 8 C.F.R. § 241.13(j), they argue that, "[i]f the regulations only provided for a maximum of six months of detention, then there would be no need for the regulations to allow for an alien to request a custody redetermination review by ERO." *Id.* at 2.

This argument is unpersuasive. Section 241.13(j) provides for a custody redetermination review process for noncitizens detained beyond six months because 8 C.F.R. § 241.13(i)(2), unlike § 241.13(i)(1), does not contain a six-month time limit and authorizes detention when there is a "significant likelihood of removal in the reasonably foreseeable future." Section 241.13(j) thus permits a noncitizen who has previously been denied release to "submit a request for review . . . six months after [ICE's] last denial . . . [and requires that ICE] render a de novo decision on the likelihood of removing the alien in the reasonably foreseeable future under the circumstances." 8 C.F.R. § 241.13(j). But the government did not re-detain petitioner under § 241.13(i)(2), and they have not shown that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future.

If the regulations authorized detention for more than six months even when there is no significant likelihood of removal in the reasonably foreseeable future, the regulation would present the constitutional problem that was at issue in *Zadvydas*: indefinite detention. *Zadvydas*,

---

[1] In their supplemental brief respondents cite to *Lam v. Noem*, No. 5:25-CV-03344-CV (RAO), 2025 WL 3763372 (C.D. Cal. Dec. 18, 2025), but that case supports petitioner's argument that § 241.13(i)(1) limits detention to a period of six months. *Lam* similarly involved a noncitizen who had previously been ordered removed, was then released on an order of supervision, and was then re-detained based on a violation of his release conditions. *Id.* The court noted that § 241.13(i)(1) "provides that where a noncitizen violates a condition of release, they 'may be continued in detention for an additional six months.'" *Id.* at *3 (quoting 8 C.F.R. § 241.13(i)(1)). In *Lam*, the petitioner "was re-detained on August 24, 2025, because he violated a condition of release by missing a supervision check-in," and the court found that "[t]herefore, Respondents are able to detain Petitioner for an additional six months, beginning on August 24, 2025, which is presumed to be reasonable." *Id.* "Only after six months would the Court" look to another source of authority to determine if detention is still authorized. *Id.* While the court in *Lam* found that the petitioner's detention was justified because he had been detained pursuant to § 241.13(i)(1) for less than six months, it read the authorized detention period under that regulation as limited to six months. *See id.*

533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").[2]  The plain meaning of the provision that "[t]he alien may be continued in detention *for an additional six months*" limits detention based on a violation of the Order of Supervision to six months.  *See* 8 C.F.R. § 241.13(i)(1).  This reading of the regulation also avoids the constitutional issue.

Although the Notice of Revocation of Release did not assert that there was a significant likelihood of removal in the reasonably foreseeable future, respondents argue in their opposition that "ICE has been actively pursuing Petitioner's removal to El Salvador" and that "Petitioner has failed to meet his burden [under *Zadvydas*] of showing there is no significant likelihood of removal in the reasonably foreseeable future."  Doc. 9 at 1, 5.  But 8 C.F.R. § 241.13(i) provides the applicable framework in this case, not *Zadvydas*.  *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025).

Section 241.13(i)(2) permits revocation of release "if, on account of changed circumstances, [*ICE*] *determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  The regulation required ICE to show a significant likelihood of petitioner's removal in the reasonably foreseeable future.  *See Escalante*, 2025 WL 2206113, at *3; *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely

---

[2] Following *Zadvydas*, the Ninth Circuit confirmed that if the six months have lapsed and there is not a significant likelihood of removal in the reasonably foreseeable future, continued detention is not authorized.  *See Thai v. Ashcroft*, 366 F.3d 790, 797 (9th Cir. 2004) ("The Government contends that Thai's continued detention is nonetheless permissible because the *Zadvydas* ruling recognized an exception that allows for the indefinite detention of an alien . . . [when] the alien [is] a danger to the community. We read *Zadvydas* differently and hold that the Supreme Court's statutory construction of § 1231(a)(6) does not authorize [such] continued detention . . . ."); *Castillo v. Chestnut*, No. 1:25-CV-01296-SAB-HC, 2026 WL 121652, at *14 (E.D. Cal. Jan. 16, 2026) (same); *see also Zadvydas,* 533 U.S. at 708 (Kennedy, J., dissenting) ("Under the majority's view . . . it appears the alien must be released in six months even if presenting a real danger to the community."); *id.* at 714 ("The rule the majority creates permits consideration of nothing more than the reasonable foreseeability of removal.").

in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); *Nguyen*, 788 F. Supp. 3d at 150.

Respondents fail to meet that burden because petitioner is still in active withholding-only proceedings, and he may not be removed to El Salvador until those proceedings conclude. *See Cuenca v. Barr*, 956 F.3d 1079, 1083 (9th Cir. 2020) ("This withholding of removal proceeding remains pending, and Padilla cannot be removed to Mexico until it concludes."), *abrogated on other grounds as recognized by Suate-Orellana v. Garland*, 101 F.4th 624, 632 (9th Cir. 2024); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015) ("DHS cannot execute the reinstated removal order until the reasonable fear and withholding of removal proceedings are complete."). Respondents provide no information about when petitioner's withholding-only proceedings may conclude, whether his application for withholding of removal is likely to be granted or denied, or how long it might take them to remove petitioner to El Salvador if his application for withholding of removal is denied. Respondents have failed to meet their burden of showing a significant likelihood of petitioner's removal in the reasonably foreseeable future, and petitioner's continued detention is therefore not authorized by 8 C.F.R. § 241.13(i)(2). Petitioner has shown a likelihood of success on his claim that 8 C.F.R. § 241.13(i) does not currently authorize his detention.

### ii. ICE Did Not Follow Required Procedures.

The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) set out the procedures to be followed in revoking release—procedures that protect important due process rights. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution"). Those procedures include:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he [will] be removed in the reasonably

8

foreseeable future, or that he [] has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3); *see also Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025).

Petitioner asserts that he was never provided the initial informal interview required by 8 C.F.R. § 241.13(i)(3) and was not given a chance "to respond to the reasons for revocations stated in the" Notification of Revocation of Release. *See* Doc. 2 at 25–26. Respondents do not dispute this assertion and provide no evidence that ICE provided a prompt informal interview as required by 8 C.F.R. § 241.13(i)(3). *See* Doc. 9.

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided . . ., [petitioner's] re-detainment was unlawful.").

As the regulation here was promulgated to protect noncitizens' due process rights, the agency's violation of the regulations requires petitioner's release. *See Rombot*, 296 F. Supp. 3d at 388. When the government has not disputed a petitioner's assertion that ICE never provided an informal interview, "[c]ourts have found this violation alone to be sufficient grounds for habeas relief" and ordered the petitioner's immediate release. *Nguyen v. Andrews*, No. 1:26-CV-00015 DAD SCR, 2026 WL 263058, at *4 (E.D. Cal. Feb. 2, 2026), *report and recommendation*

9

*adopted* No. 1:26-CV-00015-DAD-SCR, 2026 WL 412183 (E.D. Cal. Feb. 13, 2026); *see also Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111-JES-DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (collecting cases); *Sphabmixay v. Noem*, No. 25CV2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025).[3]

### b. Irreparable Harm

Petitioner has shown a likelihood of success on his claim that his continued detention pursuant to 8 C.F.R. § 241.13(i) is unlawful.  Petitioner has also shown a likelihood of success on his claim that ICE failed to follow the procedures of 8 C.F.R. § 241.13(i)(3), which is intended to protect due process rights.  Given these showings, petitioner has likewise shown he faces irreparable harm absent a preliminary injunction.  "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005).    "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two Winter factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, it "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.NS.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the

---

[3] Petitioner also raises other arguments in support of his motion. *See* Doc. 2-1. For example, he argues that the regulations only permit certain officials to revoke an Order of Supervision, and the decision to revoke petitioner's Order of Supervision was not made by such an official. *See* Doc. 2-1 at 25–26.  The Court need not reach petitioner's remaining arguments, as petitioner is entitled to the relief he seeks in his motion based on the grounds addressed above.

10

balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

**V.    Conclusion and Order**

Accordingly,

1. Petitioner Gerardo Alonso Banos-Jiron's (A-Number: 097-735-757) motion for a preliminary injunction, Doc. 2, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See, e.g. Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

4. This matter is referred to the assigned magistrate judge for further proceedings, including the preparation of findings and recommendations on the petition for writ of habeas corpus or other appropriate action.

IT IS SO ORDERED.

Dated:    April 10, 2026

_____
UNITED STATES DISTRICT JUDGE

11